UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

HEALTHCALL OF DETROIT, INC.,

    Plaintiff,

v.                                                       Case No. 21-cv-12697

FARMERS INSURANCE EXCHANGE,

    Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION
TO DISMISS AND DIRECTING BRIEFING ON ISSUE OF SUBJECT MATTER
JURISDICTION OVER STATE LAW CLAIMS**

Before the court is Defendant "Farmers Insurance Exchange's Motion to Dismiss Second Amended Complaint" (ECF No. 38) in this action initiated by Plaintiff Health Call of Detroit, Inc. The motion is fully briefed. Having reviewed the record, the court finds a hearing unnecessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below, the court will grant Defendant's Motion in part, in that the court will dismiss Count II, as it relates to Plaintiff's request for a declaratory judgment that Mich. Comp. Laws 500.3157 is unconstitutional, as well as Count III. The court will further order supplemental briefing on the issue of whether it has subject matter jurisdiction over Plaintiff's state law claims, which must be resolved before the court can adjudge the remaining issues in Defendant's Motion.

**I.    BACKGROUND**

In 2019, the Michigan No-Fault Automobile Insurance Act (the "Act") underwent numerous revisions. (ECF No. 32, PageID.825.) At issue in this case are the changes to Section 3157 of the Act, which governs a medical provider's reimbursement for services

rendered to a patient injured in an automobile accident. (*Id.*) Under the prior version of the statute, "a medical provider's rate was reimbursable as long as it was 'reasonable and customary'[,] but there was no pre-determined amount nor was there a set limit." (*Id.,* PageID.826.) After it was amended, the statute provides, under subsection (2), that "a medical provider is entitled to received reimbursement for its services up to an amount that is equal to 200% of the Medicare rate for the same service." (*Id.*, PageID.829); *see* Mich. Comp. Laws § 500.3157(2). However, subsection (8) caps the amount allowed for payment or reimbursement to "the average amount charged by the physician, hospital, clinic, or other person for the treatment or training on January 1, 2019." Mich. Comp. Laws § 500.3157(8).

For services not covered by Medicare, subsection (7) of Section 3157 conversely limits the reimbursement to "a small fraction of their prior reimbursement rate." (ECF No. 32, PageID.830-31); *see* Mich. Comp. Laws § 500.3157(7). According to Plaintiff, "for medical providers who do not have an 'amount payable' for their services under Medicare, their reimbursement rates **_would plummet by 45%_** for July 2021-2022, by 46% in 2022-2023, **_and by 47.5%_** after July 2023, where it would remain." (ECF No. 32, PageID.831) (emphasis in original).

Plaintiff "is a community healthcare organization that provides both in-home private duty nursing services and community living support/home health aide as well as in-clinic behavioral therapy, speech and occupational therapy, and diagnostic services." (*Id.*, PageID.817.) Plaintiff's patients include those who had no-fault insurance provided by Defendant, including M.C., N.C., and C.J., who were injured in automobile accidents in August 2012, June 2020, and July 2012, respectively. (*Id.*, PageID.818, 821, 823.)

Plaintiff claims that Defendant has refused to fully reimburse Plaintiff for the in-home healthcare services provided to these patients, in part relying on Mich. Comp. Laws § 500.3157(7). (*Id.*, PageID.819-21, 822-23, 824-25.)

The Second Amended Complaint alleges three causes of action, one of which is for declaratory relief. (ECF No. 32, PageID.853-61.) In essence, Plaintiff asks the court to find that Plaintiff is entitled to the full rate of reimbursement pursuant to either the Michigan Court of Appeals' ruling in *Andary v. USAA Casualty Ins. Co.,* No. 356487, 2022 WL 3692767 (Mich. Ct. App. Aug. 25, 2022), or Section 3157(2). In the alternative, Plaintiff asks the court to invalidate subsections (7) and (8) of Mich. Comp. Laws § 500.3157 as unconstitutional takings.

## II.  STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. *Static Control Components, Inc. v. Lexmark Int'l, Inc.,* 697 F.3d 387, 401 (6th Cir. 2012). "To survive a motion to dismiss" under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quotation omitted). Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. In applying this standard, the court views the allegations in the light most

favorable to Plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008).

While a case is pending in front of the court, it must never be overlooked that federal courts are courts of limited jurisdiction and have authority to decide only the cases that the Constitution and Congress have empowered them to resolve. *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008). Thus, the court "ha[s] a duty to consider [its] subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) (citations omitted). "The question of subject matter jurisdiction may be raised at any time, whether at the suggestion of the parties or *sua sponte* by the court." *Lexington-Fayette Urban County Gov't Civil Service Comm'n v. Overstreet,* 115 F. App'x 813, 816 (6th Cir. 2004). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### III. DISCUSSION

### A. Federal Claims

The court starts its analysis with the claims over which original jurisdiction clearly exists.[1] These concern Plaintiff's constitutional challenge alleged in Count III, titled "Unconstitutional Taking in Violation of Fifth and Fourteenth Amendment (in the alternative" (ECF No. 32, PageID.856), and for which Plaintiff seeks a declaratory judgment in Count II (*id.*, PageID.855). Fundamentally, Plaintiff posits that Mich. Comp.

---

[1] In its Motion, Defendant rejects the argument that the court has diversity jurisdiction over Plaintiff's state claims. (ECF No. 38, PageID.1023.) Plaintiff has provided no response to this assertion.

Laws § 500.3157(7) and (8) mandate Plaintiff and other medical providers to operate under "an unconstitutional confiscatory rate," which is "so low that the business entity cannot derive a profit." (*Id.*, PageID.858, 860; ECF No. 41, PageID.1078-79.)

The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: '[N]or shall private property be taken for public use, without just compensation.'" U.S. Const. amend. V. A government taking can occur without a physical occupation, such as when a regulation of private property "goes too far." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). To wit, while a state has the power to regulate, such as by limiting the price certain industries charged for goods and services, "it is not to be inferred that this power of limitation or regulation is itself without limit. This power to regulate is not a power to destroy, and limitation is not the equivalent of confiscation." *Stone v. Farmers' Loan & Tr. Co.,* 116 U.S. 307, 331 (1886).

An essential requirement for a Takings Clause challenge is the existence of a constitutionally protected property interest. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1000 (1984). "Property interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 1001 (quotation marks in original omitted); *see also Hall v. Meisner*, 51 F.4th 185, 189 (6th Cir. 2022), *reh'g denied,* No. 21-1700, 2023 WL 370649 (6th Cir. Jan. 4, 2023) ("'Constitution protects rather than creates property interests,' which means that 'the existence of a property interest,' for purposes of whether one was taken, 'is determined by reference to existing rules or understandings that stem from an independent source such as state law.'")

5

(citation omitted). A property interest must be more than an "abstract need or desire" or "a unilateral expectation" of a single party. *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972). A plaintiff "must, instead, have a legitimate claim of entitlement to it." *Id.*

The Second Amended Complaint alleges that Plaintiff has "a constitutionally-protected rate of return on its investment." (ECF No. 32, PageID.860.) "At any rate, loss of future profits – unaccompanied by any physical property restriction – provides a slender reed upon which to rest a takings claim." *Andrus v. Allard*, 444 U.S. 51, 66 (1979). But fatal to Plaintiff's claims here is Plaintiff's failure to identify any origin of its claimed right to profit from Michigan's no-fault insurance scheme specifically. While the previous version of the Act purportedly allowed Plaintiff to be eligible for a higher rate of reimbursement, "eligibility criteria alone are insufficient to create a property interest in the receipt of reimbursements." *Latimer v. Robinson*, No. 04-5828, 2005 WL 1513103, at *2 (6th Cir. June 21, 2005) (holding that dentists have no constitutionally protected interest in continued receipt of reimbursements for the provision of orthodontic services provided to state's Medicaid enrollees to sustain a due process claim) (citing cases); *see Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 605, 609-10 (6th Cir. 2016) (finding that plaintiffs failed to show a property interest in the rights to receive cost of living adjustments (COLAs) to service retirement annuities according to pre-2013 law because, "to establish a property interest in the right to COLAs calculated according to pre-2013 law, Plaintiffs 'must point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the [legislature] to rescind the benefit'" and dismissing the taking claims for that reason).

6

Additionally, as another court has pointedly observed in a similar case, the argument raised by Defendant – that Plaintiff has no legally protected interest in continuing to receive a particular reimbursement rate because it voluntarily participated in the regulated system – is persuasive. *HealthCall of Detroit, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 22-10797, 2022 WL 3153780, at *15 (E.D. Mich. Aug. 8, 2022) (Cox, J.) (citing cases).

Plaintiff does not dispute the voluntariness of its participation in Michigan's no-fault insurance scheme or that the challenged provisions at issue do not compel Plaintiff to provide care to patients covered by no-fault insurance. Nonetheless, Plaintiff maintains that the Supreme Court has rejected the argument "that a 'voluntary participant' in a market cannot allege a Takings claim. . . as a matter of law." (ECF No. 41, PageID.1080.) In so doing, Plaintiff relies on *Horne v. Dep't of Agriculture*, 576 U.S. 350 (2015). In that case, the Court considered the constitutionality of the Department of Agriculture's order that "a percentage of a [raisin] grower's crop must be physically set aside in certain years for the account of the Government, free of charge[,so that] [t]he Government [could] sell[], allocate[], or otherwise dispose[] of the raisins in ways it determine[d] [were] best suited to maintaining an orderly market." *Id.* at 354. The Court found that this reserve requirement was "a clear physical taking," since the growers must physically surrender their raisins to the government who assumed possession and control "as if [it] held full title and ownership." *Id.* at 361-62. Such an appropriation was thus "a *per se* taking that requires just compensation." *Id.* at 358, 362-63. Given those facts, the Court rejected the government's contention that the raisin growers could be

7

required to give up the right to possess and control the disposition of their property because they voluntarily chose to participate in the raisin market. *Id.* at 364-65.

*Horne* is inapposite to this case, which does not involve a physical taking, but a regulatory taking. (ECF No. 41, PageID.1077-78); *see HealthCall*, 2022 WL 3153780, at *14. The Supreme Court already said, and reiterated in *Horne*, that it is inappropriate to apply the physical-taking tests to regulatory takings. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 323 (2002) ("Th[e] longstanding distinction between acquisitions of property for public use, on the one hand, and regulations prohibiting private uses, on the other, makes it inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking,' and vice versa."); *cf. Horne*. 576 U.S. at 361.

Furthermore, Plaintiff misunderstands the Court's teaching in *Horne.* In that case, the raisin growers unquestionably had a property right to their raisins protected by the Constitution. On that premise, the Court rejected the idea that one's rights to use or dispose of one's property – by participating in the market – may be conditioned on a waiver of the constitutional rights to just compensation for a government taking. *Horne*, 576 U.S. at 365-66 ("Selling produce in interstate commerce, although certainly subject to reasonable government regulation, is similarly not a special governmental benefit that the Government may hold hostage, to be ransomed by the waiver of constitutional protection.") Here, Plaintiff has not demonstrated that it has a cognizable constitutionally protected property interest like that in *Horne*.

Similarly, Plaintiff misreads *Sierra Med. Servs. All. v. Kent*, 883 F.3d 1216, 1225 (9th Cir. 2018). There, in ascertaining the plaintiffs' constitutionally protected property

8

interest for a takings claim, the Ninth Circuit first sustained the proposition that a healthcare provider's voluntary participation in the Medicaid program did not confer it with a property interest in a particular reimbursement rate. *Id.* at 1224. However, in that case, the plaintiffs also relied on "[a] separate statute [that] require[d] providers to render their emergency service 'without first questioning the patient or any other person as to his or her ability to pay.'" *Id.* Under this provision, providers like the plaintiffs were restricted from withdrawing from the program. *Id.* And, even if they disenrolled from the program, the mandatory-care obligation "would continue to apply to them indefinitely." *Id.* "Those material differences, along with the [p]laintiffs' property interest in their ambulances, equipment, wages, supplies, insurance, goodwill, and ambulatory-service and employment contracts, rather than the reimbursement rate per se," make the voluntary participant doctrine inapplicable. *Id.* at 1224-25.

In this case, unlike in *Sierra*, Plaintiff has failed to identify any distinguishing features beyond being a healthcare provider participating in Michigan's no-fault scheme. While Plaintiff's Response makes a veiled reference to "'property' interests . . . which are [purported to be] broader than merely an interest in a certain 'reimbursement rate'," no explanation is provided as to what those interests are. (ECF No. 41, PageID.1079.) It is well established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

9

Because Plaintiff has failed to plausibly plead a constitutionally protected property interest,[2] its claims related to unconstitutional takings will be dismissed.

## B. State Claims

Having rejected the federal-question claims, the court now moves to Plaintiff's remaining state law claims alleging violations of the Act, over which Plaintiff asserts that the court has diversity jurisdiction. (ECF No. 32, PageID.816.)[3] Under 28 U.S.C. § 1332(a), diversity jurisdiction requires that (1) the matter in controversy exceed $75,000 and (2) complete diversity exists between the disputing parties. The Second Amended Complaint undisputedly alleges that the amount in controversy exceeds $75,000. (ECF No. 32, PageID.825.) However, Defendant has contested that complete diversity exists between the parties. (ECF No. 38, PageID.1023-24.) Plaintiff has not responded to Defendant's contention.

Although Defendant does not move to dismiss for lack of subject matter jurisdiction, the court recognizes its duty to examine its jurisdiction *sua sponte* and must address this issue pursuant to that duty before adjudicating the merits of Plaintiff's remaining state law claims. The parties have not provided the court with sufficient information to make this determination, and therefrom arises the need for additional briefings.

---

[2]   The court need not address the other arguments raised by Defendant because its finding of no constitutionally protected interest disposes of Plaintiff's constitutional claim.

[3]   Plaintiff also seeks declaratory relief under the Declaratory Judgment Act, but these are only available "[i]n a case of actual controversy within [the court's] jurisdiction." 28 U.S.C. § 2201.

## IV. CONCLUSION

Because Plaintiff fails to plausibly allege a constitutionally protected property interest, Count II (as it relates to Plaintiff's request for a declaratory judgment that Mich. Comp. Laws § 500.3157 is unconstitutional) and Count III of the Second Amended Complaint are dismissed for failure to state a claim upon which relief can be granted. Accordingly,

IT IS ORDERED that "Farmers Insurance Exchange's Motion to Dismiss Second Amended Complaint" (ECF No. 38) is GRANTED IN PART AND TAKEN UNDER ADVISEMENT IN PART, pending the court's determination on whether the court has subject matter jurisdiction over Plaintiff's state law claims.

IT IS FURTHER ORDERED that within seven (7) days of this Opinion and Order, Plaintiff shall file a brief, not to exceed 10 pages, explaining why the remaining state law claims should not be dismissed for lack of subject matter jurisdiction. Defendants may file a response, not to exceed 10 pages each, no later than seven (7) days after the filing of Plaintiff's supplemental brief. Plaintiff may file a reply, not to exceed 5 pages, within three (3) days of Defendant's response.

                                                         s/Robert H. Cleland   /
                                                         ROBERT H. CLELAND
                                                         UNITED STATES DISTRICT JUDGE

Dated: April 20, 2023

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 20, 2023, by electronic and/or ordinary mail.

                                                         s/Lisa Wagner   /
                                                         Case Manager and Deputy Clerk
                                                         (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\21-12697.HEALTHCALL.Mtd.NH.EKL.V2.docx